UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

REBECCA FRIEDMANN,

        Plaintiff,

vs.                                  Case No.  3:08-cv-562-J-MCR

MICHAEL J. ASTRUE, Commissioner of the
Social Security Administration,

        Defendant.
_____/

**MEMORANDUM OPINION AND ORDER[1]**

       This cause is before the Court on Plaintiff's appeal of an administrative decision

denying her application for Social Security benefits.  The Court has reviewed the record,

the briefs, and the applicable law.  For the reasons set forth herein, the Commissioner's

decision is **REVERSED** and **REMANDED**.

**I.      PROCEDURAL HISTORY**

       Plaintiff filed an application for a period of disability and disability insurance

benefits ("DIB") on November 9, 2004, alleging an inability to work since August 2,

2004.  The Social Security Administration ("SSA") denied the application initially and on

reconsideration.  (Tr. 24-28).  Plaintiff then requested and received a hearing before the

Honorable Teresa J. Davenport, an Administrative Law Judge (the "ALJ") on June 19,

2006.  (Tr. 446-86).  On July 25, 2006, the ALJ issued a decision finding Plaintiff was

not disabled.  (Tr. 17-23).  On August 28, 2006, Plaintiff filed a Request for Review by

_____

       [1] The parties consented to the exercise of jurisdiction by a United States Magistrate
Judge.  (Doc. 8).

1

the Appeals Council.  (Tr. 13-14).  The Appeals Council denied Plaintiff's Request for Review (Tr. 6-10), thus making the ALJ's July 25, 2006 decision the final decision of the Commissioner.  Plaintiff timely filed her Complaint in the U.S. District Court on June 4, 2008.  (Doc. 1).

## II.    NATURE OF DISABILITY CLAIM

### A.    Basis of Claimed Disability

Plaintiff claims to be disabled since August 2, 2004, due to asthma, back problems, possible Sjogren's syndrome, fatigue, and memory problems.

### B.    Summary of Evidence Before the ALJ

Plaintiff was 51 years of age on the date the ALJ's decision was issued.  (Tr. 453).  She has a high school education and has past relevant work experience as an office manager and bookkeeper.  (Tr. 453, 76).  Plaintiff's medical history is detailed in the ALJ's decision and will be summarized here.[2]

Plaintiff reported to Dr. Marian F. Ceniza at the Arthritis & Osteoporosis Treatment Center on March 28, 2001.  (Tr. 185).  Plaintiff indicated that she had been experiencing low back pain for more than ten years.  That same day, Plaintiff underwent an x-ray of her cervical spine, which revealed generalized osteopenia, loss of normal cervical curvature secondary to paraspinal muscle spasm, and degenerative disc disease with "slight encroachment of neural foramina at the level of C6-C7 on the right side."  (Tr. 180).  Dr. Ceniza diagnosed degenerative disc disease of the LS spine with

---

[2] As Plaintiff's appeal deals only with her alleged physical impairments, the Court will only summarize the medical records associated with her relevant physical impairments in this Opinion and will not discuss any of the records associated with any alleged mental impairments.

secondary myofascial pain syndrome. (Tr. 177). Plaintiff was instructed to stop taking Celebrex and to begin taking Vioxx and Flexeril. Id. However, in July 2001, Plaintiff reported a rash as a result of taking Vioxx/Flexeril and had to discontinue taking those medications. (Tr. 163). Plaintiff was prescribed alternative medications for her pain. Id. At some point, Plaintiff was prescribed Ultram. Again, this medication caused Plaintiff to break out in a rash and she had to stop taking it. (Tr. 132). She was directed to take Plaquenil. Id.

On January 7, 2003, an x-ray of Plaintiff's lumbosacral spine and pelvis was performed. (Tr. 140). The x-ray showed minimal scoliosis and "degeneration of the discs affecting the mid thoracic and low thoracic spine." Id. An MRI was then performed on January 27, 2003 revealing "diffuse disc space dehydration throughout the lumbar spine with mild central disc bulge at L4-5 and L5-S1 with central annular tear at the L5-S1 level. No evidence of thecal sac or nerve root impingement." (Tr. 136).

On September 15, 2003, Plaintiff presented to Dr. James D. Popp, a rheumatologist. Plaintiff reported intermittent back pain for the last twenty years, but that in the past three years, the pain had become a more persistent problem. (Tr. 262). Plaintiff also reported being very fatigued during the day. Id. Dr. Popp noted a mild reduction in the lateral rotation of Plaintiff's cervical spine and no tenderness over the thoracic or lumbosacral spine. (Tr. 263). Plaintiff's upper and lower extremity joints had good range of motion without pain and a neurologic exam revealed normal motor strength. Id. Plaintiff had negative straight leg raises and her deep tendon reflexes were symmetrical. Id. Dr. Popp noted Plaintiff complained of dry eyes/mouth and her blood work was positive for SSA antibody which he opined "could be consistent with a

3

diagnosis of Sjogren's Syndrome." Id. Dr. Popp also noted that Plaintiff's primary problem was fatigue during the day. Id.

On December 15, 2003, Plaintiff presented for an initial evaluation with Dr. Andrea M. Trescot at the Pain Center. (Tr. 364-66). Plaintiff told Dr. Trescot her back pain began more than twenty years ago, but that it had been worsening in the last two and a half years. (Tr. 364). Plaintiff described her pain as aching and variable in intensity. Id. She stated it was predictable and bothersome all of the time. Id. Plaintiff reported her pain was increased by sitting for prolonged periods of time, walking, lifting, bending, and was decreased by cold packs, heat, laying on the floor with her knees up, and a hot shower. Id. Plaintiff stated she had tried a TENS unit in past, but it did not help, however, physical therapy and medications helped somewhat. Id. Plaintiff listed medications she had tried in the past as: Celebrex, Vioxx, Naprosyn, Relafen, Ibuprofen, Neurontin (no benefit), Davocet and Vicodin (which made her drowsy), Flexeril (which gave no relief), and Elavil. Id. Upon examination, Plaintiff was ambulating independently and her strength was observed to be 5/5 for both upper and lower extremities. (Tr. 365). Plaintiff had tenderness of the bilateral sacroiliac joints and tenderness in the midline with defects at L5/S1 and S1/2. Id. Plaintiff also had tenderness of the "bilateral greater trochanteric bursae, bilateral distal piriformis, and bilateral piriformis." Id. Immediately following the initial examination, Plaintiff underwent a sacral nerve block and Dr. Trescot increased Plaintiff's dosage of Neurontin. (Tr. 366).

Plaintiff then underwent a series of injections starting in March 2004. (Tr. 363, 362, 360, 359, 358, 355, 354). The injections improved Plaintiff's pain temporarily, but

4

the pain returned. On October 13, 2004, Plaintiff reported that the injection she received did not relieve her pain. (Tr. 353). She also complained of memory problems and was concerned her medications were causing the problems. Id. Plaintiff was advised to increase her dosage of Neurontin and was instructed to discuss the memory problems with her primary care physician. Id.

On October 14, 2004, Dr. Trescot sent Plaintiff to Anita L. Davis, a physical therapist, for a functional capacity evaluation ("FCE"). (Tr. 238). In the FCE report, Ms. Davis opined:

> [b]ased on the client's efforts as they were demonstrated this date she is able to perform at the Sedentary physical demand Level for activity above the waist. However, her ability to consistently sustain this level of performance, working an 8-hr day, is doubtful. Her performance suggests that she would require intermittent breaks with relatively little exertion/activity overall.

Id. The report also indicated Plaintiff could sit frequently and stand occasionally. (Tr. 239). Her hand dexterity was found to be excellent, her upper extremity strength was determined to be 4+/5 in shoulders/elbows, and her lower extremity strength was 5/5 bilaterally. Id. Plaintiff's grip was determined to be within the normal limits. Id. Plaintiff was found able to squat occasionally, reach up occasionally, reach out frequently, bend occasionally, and twist occasionally. (Tr. 241).

On April 27, 2005, Plaintiff underwent intradiscal electrothermic therapy ("IDET")[3], however, at a follow-up visit on May 5, 2005, Plaintiff reported that she had the same pain as before the IDET. (Tr. 347). On June 2, 2005, Plaintiff underwent an

---

[3] IDET is a minimally invasive surgical treatment for spinal disc related chronic low back pain.

x-ray of her thoracic spine. (Tr. 367). The x-ray showed "altered curvature of the spine, which may be postural or could indicate muscular spasm." Id. On August 19, 2005, Plaintiff reported she felt ninety percent better with the Duragesic patch, however, it was causing a rash. (Tr. 345). Plaintiff's dosage of Duragesic was decreased and she underwent a caudal epidural. Id.

On October 14, 2005, Plaintiff underwent a nerve conduction and EMG study. (Tr. 341). The nerve conduction study was normal "with the exception of the right posterior tibial motor nerve which demonstrate[d] a reduced amplitude when compared to the left." Id. This suggested "axonal compromise and [might] indicate L5-S1 lumbar pathology as the right sural sensory nerve latency [was] normal." Id. The EMG study demonstrated "mild spontaneous activity in the right gastroc muscle and bilateral spontaneous activity in the lumbar paravertebral muscles." Id. This result suggested "a chronic right S1 radiculopathy." Id.

On November 16, 2005, Plaintiff underwent a decompression of her L5 and S1 nerve roots. (Tr. 339). The procedure provided Plaintiff with partial relief and she underwent a repeat of the procedure on December 28, 2005. (Tr. 383).

On February 26, 2005, Plaintiff presented for a consultative examination with Dr. Kenneth Kushner. (Tr. 281-83). Plaintiff reported being able to stand for twenty or thirty minutes at a time, walk fifteen to twenty minutes, carry ten pounds, and perform household chores. (Tr. 281). Dr. Kushner observed Plaintiff's gait as normal with a slight swing, determined her grip strength was 5/5 on the right and 4/5 on the left, and found Plaintiff had a normal range of motion. (Tr. 282). Dr. Kushner opined Plaintiff had no difficulty with sitting, standing, walking, lifting, and hearing. (Tr. 283).

On June 13, 2006, Dr. Trescot[4] completed a questionnaire to physician regarding Plaintiff's pain. (Tr. 408-12). The Questionnaire indicated Plaintiff suffered from impairments which caused pain: chronic intractable pain syndrome, Sjogren's Syndrome, and lumbar radiculopathy. (Tr. 408). Plaintiff's pain was rated as severe (eight on a scale of one to ten) and constant. Id. As for any limitations caused by these impairments, Dr. Trescot referred to the FCE. (Tr. 410). Dr. Trescot opined Plaintiff was unable to work even on a part-time basis due to the pain and the increased pain upon exertion. (Tr. 412).

### C. Plaintiff's Testimony at the Hearing

At the hearing, Plaintiff claimed she was in constant pain and that the pain was usually an eight on a scale of one to ten. (Tr. 458). She also stated she was unable to work her prior jobs as a bookkeeper and office manager because she was in pain all day and had problems with her memory. (Tr. 470). Plaintiff testified that on a typical day, she would wake at sometime between 7:30 and 9:00 a.m. and prepare her breakfast (usually cereal or a granola bar), take a hot shower because she was stiff and the shower would help, attempt some housework (a little vacuuming or dusting), eat lunch, which she would prepare herself, and then take a two to three hour nap. (Tr. 464). After her nap, Plaintiff would begin to prepare dinner and her husband would often finish for her because she would be in pain. (Tr. 465). After dinner, Plaintiff would

---

[4] The undersigned notes that during the hearing, Plaintiff's representative pointed out that the questionnaire was originally signed by Bobbie Kopit, a physician's assistant. (Tr. 450). However, upon learning this, Plaintiff returned to the Pain Center and the questionnaire was signed by Dr. Ashraf Andrales. Id. As both parties treat the questionnaire as being one from Dr. Trescot, the undersigned will do the same.

recline and watch television.  Id.  Plaintiff testified she is able to drive, can shop for

groceries, and does laundry with help from her husband.  Id.  She also stated she goes

out to dinner with friends approximately once a week and went on a vacation to North

Carolina last September.  (Tr. 466).  She testified that in sixteen hours of wake time,

she can sit or lie down for ten hours.  (Tr. 467).  She can sit and stand for thirty minutes

without having to change position.  Id.  The most she can lift and carry is a gallon of milk

and she can push about thirty pounds.  (Tr. 468).  She tries not to pull anything because

it is too painful.  Id.  Plaintiff also testified that at the time she lost her job, she was

having discussions with her husband about quitting because her pain was so bad.  (Tr.

476).

   **D.**   **Summary of the ALJ's Decision**

   A plaintiff is entitled to disability benefits when she is unable to engage in a

substantial gainful activity by reason of any medically-determinable physical or mental

impairment which can be expected to either result in death or last for a continuous

period of not less than twelve (12) months.  42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20

C.F.R. § 404.1505(a).  The ALJ must follow five steps in evaluating a claim of disability.

See 20 C.F.R. § 416.920.  First, if a claimant is working at a substantial gainful activity,

she is not disabled.  29 C.F.R. § 416.920(b).  Second, if a claimant does not have any

impairment or combination of impairments which significantly limit her physical or

mental ability to do basic work activities, then she does not have a severe impairment

and is not disabled.  20 C.F.R. § 416.920(c).  Third, if a claimant's impairments meet or

equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is

disabled.  20 C.F.R. § 416.920(d).  Fourth, if a claimant's impairments do not prevent

her from doing past relevant work, she is not disabled.  20 C.F.R. § 416.920(e).  Fifth, if

a claimant's impairments (considering her residual functional capacity, age, education,

and past work) prevent her from doing other work that exists in the national economy,

then she is disabled.  20 C.F.R. § 416.920(f).  Plaintiff bears the burden of persuasion

through step four, while at step five, the burden shifts to the Commissioner.  Bowen v.

Yuckert, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287 (1987).

In the instant case, the ALJ determined Plaintiff met the nondisability

requirements of the Social Security Act and was insured for benefits through December

31, 2009.  (Tr. 17).  At step one, the ALJ found Plaintiff had not engaged in substantial

gainful activity since her alleged onset date, August 2, 2004.  (Tr. 19).  At step two, the

ALJ found Plaintiff had the following severe impairments: "disorders of the spine and

cough variant asthma."  Id.  The ALJ specifically found that Plaintiff did not have any

severe mental disorders.  Id.  At step three, the ALJ stated "[t]he claimant does not have

an impairment or combination of impairments that meets or medically equals one of the

listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  (Tr. 20).

With respect to Plaintiff's RFC, the ALJ found Plaintiff was able to:

> lift and carry 10 pounds occasionally and 10 pounds
> frequently.  She is able to sit for about 6 hours in an 8-hour
> workday and she is able to stand and/or walk for about 2
> hours in an 8-hour workday.  She should not be exposed to
> fumes, odors, gases or dust due to asthma.

Id.  The ALJ believed Plaintiff's assertions regarding her subjective claims were not

entirely credible.  Id.

At step four, the ALJ determined Plaintiff was able to perform her past relevant

work as an office manager and bookkeeper as they were actually performed.  (Tr. 22).

9

As such, the ALJ found Plaintiff was not disabled within the meaning of the Social Security Act.  (Tr. 22-23).

III.    ANALYSIS

    A.    <u>The Standard of Review</u>

        The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, <u>McRoberts v. Bowen</u>, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence.  <u>Richardson v. Perales</u>, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  <u>Foote v. Chater</u>, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing <u>Walden v. Schweiker</u>, 672 F.2d 835, 838 (11th Cir. 1982) and <u>Richardson</u>, 402 U.S. at 401).

        Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  <u>Edwards v. Sullivan</u>, 937 F.2d 580, 584 n.3 (11th Cir. 1991); <u>Barnes v. Sullivan</u>, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  <u>Foote</u>, 67 F.3d at 1560; <u>accord</u>, <u>Lowery v. Sullivan</u>, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of

factual findings).

**B.    Issues on Appeal**

Plaintiff's brief raises four main arguments regarding the errors committed by the

ALJ.[5]  Specifically, Plaintiff claims the ALJ erred by failing to give the opinion of

Plaintiff's treating physician, Dr. Trescot, controlling weight.  Additionally, Plaintiff argues

the ALJ improperly evaluated Plaintiff's claims of pain.  Plaintiff also believes the ALJ

erred in finding she was able to return to her past work as a bookkeeper and/or office

manager.  Finally, Plaintiff argues the ALJ's decision was not supported by substantial

evidence.

The Commissioner responds that the decision of the ALJ is indeed based on

substantial evidence and the ALJ properly considered the opinions of Plaintiff's

physicians, Plaintiff's own testimony regarding her pain, and properly determined

Plaintiff was capable of performing her former work as a bookkeeper and office

_____

[5] Plaintiff's brief appears to raise more legal issues.  For example, on the first page of her brief, Plaintiff also claims the ALJ erred by: "improperly evaluating her non-exertional impairments; [] failing to accord substantial weight to the evidence submitted at the Appeals Council level; []failing to consider the side-effects of her prescribed medications upon her ability to perform substantial gainful activity . . ."  (Doc. 12, p.1).  However, these claims are not discussed again in the brief and therefore, no legal authority is provided to support them.  This is not sufficient and the Court will not engage in speculation as to Plaintiff's arguments regarding these issues.  See Outlaw v. Barnhart, 197 Fed.Appx. 825, 828 n.3 (11th Cir. 2006) (plaintiff waived issue regarding physical exertional impairments despite listing issue in brief where plaintiff "did not elaborate on this claim or provide authority about this claim") (citing Cheffer v. Reno, 55 F.3d 1517, 1519 n. 1 (11th Cir. 1995) (concluding that issue was waived, even though party's brief listed the issue in the statement of issues, because party provided no argument on the merits of the claim)); Rowe v. Schreiber, 139 F. 3d, 1381, 1382 n. 1 (11th Cir. 1998) (noting in the absence of an argument, an issue is deemed abandoned); Callahan v. Barnhart, 186 F. Supp. 2d 1219, 1230 n. 5 (M.D. Fla. 2002) (noting that issue raised only in heading of a brief without any further elaboration or factual support is deemed waived). Accordingly, the Court will not consider the issues not fully briefed by Plaintiff's counsel.

manager. Because this Court finds the Commissioner's decision is due to be remanded

based on the ALJ's failure to properly analyze Plaintiff's pain testimony, the Court will

begin with that issue.

**1.      Whether the ALJ appropriately evaluated Plaintiff's subjective claims**

Plaintiff argues the ALJ erred in evaluating her subjective claims, including her

pain. (Doc. 12, pp. 12-14). During the hearing, Plaintiff claimed she was in constant

pain and that the pain was usually an eight on a scale of one to ten. (Tr. 458). She also

stated she was unable to work her prior jobs as a bookkeeper and office manager

because she was in pain all day and had problems with her memory. (Tr. 470). Plaintiff

further testified that on a typical day, she would take a two to three hour nap. (Tr. 464).

Plaintiff stated that in sixteen hours of wake time, she could sit or lie down for ten hours

and she could sit and stand for thirty minutes without having to change position. (Tr.

467). The most she could lift and carry was a gallon of milk, she could push about thirty

pounds, and she tried not to pull anything because it was too painful. (Tr. 468).

Pain is a non-exertional impairment. Foote, 67 F.3d at 1559. The ALJ must

consider all of a claimant's statements about her symptoms, including pain, and

determine the extent to which the symptoms can reasonably be accepted as consistent

with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the

medical signs and laboratory findings show medical impairments which reasonably

could be expected to produce the pain alleged, the ALJ must apply the Eleventh

Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying
> medical condition and either (2) objective medical evidence

that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, 67 F.3d at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). Once a claimant establishes through objective medical evidence that an underlying medical condition exists that could reasonably be expected to produce pain, 20 C.F.R. sections 404.1529 and 416.929 provide that the Commissioner must consider evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms in deciding the issue of disability. Foote, 67 F.3d at 1561. Pain alone can be disabling, even when its existence is unsupported by objective evidence, Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

In this case, the ALJ properly applied the pain standard. The ALJ specifically stated she found Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms," but the ALJ determined Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely credible." (Tr. 20).

When an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.

Here, the ALJ found Plaintiff's credibility was weakened by the fact that she ceased working her prior job, not because she could no longer do the work, but because she did not want to work more than thirty to thirty-two hours per week. (Tr. 20-21). However, the ALJ did not discuss Plaintiff's testimony that she was considering quitting the job prior to being fired because the pain was too much. (Tr. 476). In any event, as the ALJ did not specify which of Plaintiff's claims she found to be not fully credible, the Court is not certain how the fact that Plaintiff stopped working because she did not want to work forty hours reflects negatively on Plaintiff's credibility.

The ALJ also noted Plaintiff reported low back pain for more than twenty years and it had not prevented her from working during that time. (Tr. 21). However, the ALJ failed to address Plaintiff's testimony during the hearing that while she experienced back pain for twenty-five years, it had been minor pain until the six years preceding the hearing and it had been getting progressively worse. (Tr. 457). The ALJ noted that on August 25, 2004, shortly after Plaintiff was fired from her job, Plaintiff reported to her treating doctor that she was still experiencing pain and that it was the same pain. (Tr. 355). While the ALJ was clearly attempting to show that Plaintiff was experiencing the same pain after her termination as she was prior to her termination, this does not necessarily show that Plaintiff was able to work. As noted above, Plaintiff testified that she was considering leaving her job prior to being terminated because the pain was too much. (Tr. 476).

The ALJ's decision does not provide any other specific reasons for discrediting Plaintiff's testimony. Instead, the ALJ selectively summarized the medical evidence. The ALJ's summary appears to have focused on the medical records supporting her

14

conclusion and failing to address other evidence which tends to support Plaintiff's allegations. For example, the ALJ noted that nerve conduction studies in 2003 were normal, the x-rays in 2003 showed only that Plaintiff had minimal scoliosis, and an MRI revealed no evidence of nerve root impingement. (Tr. 21). The ALJ failed to mention, however, that the x-ray report in March 2001 revealed "loss of cervical curvature secondary to paraspinal muscle spasm" as well as degenerative disc disease with "slight encroachment of neural foramina at the level of C6-C7 on the right side." (Tr. 180). Additionally, the ALJ neglected to discuss how the MRI did reveal "diffuse disc space dehydration throughout the lumbar spine with mild central disc bulge at L4-5 and L5-S1 with central annular tear at the L5-S1 level." (Tr. 136).

Additionally, the ALJ noted Plaintiff received a series of injections for hip and back pain in 2004 and that the injections helped Plaintiff feel better. Id. She also observed that Plaintiff received several more injections, as well as a caudal epidural in August 2005, and that the EMG/nerve conduction study ordered by Dr. Trescot was normal, only suggesting right S1 radiculopathy. Id. She then referenced Dr. Trescot's decompression of the L4 and L5 nerve roots and the epidural performed in December 2005. Again however, the ALJ failed to mention the many pain medications Plaintiff was prescribed or the spinal nerve blocks, the epidural performed in August 2005, the IDET performed in April 2005, or the June 2005 x-rays of Plaintiff's thoracic spine showing "altered curvature of the spine, which may be postural or could indicate muscular spasm" (Tr. 367). Nor did the ALJ address Plaintiff's claims that the procedures and medications only provided temporary relief of her pain. The sheer number of procedures Plaintiff underwent and the medications administered to Plaintiff

15

tend to support Plaintiff's claims that she was experiencing severe pain.

The ALJ also mentioned the FCE but failed to mention the examiner's opinion that it was doubtful Plaintiff could work a full eight hours because she would need to take "intermittent breaks with relatively little exertion/activity overall." (Tr. 238). Finally, the ALJ noted that in January 2006, Plaintiff did not have any complaints and her physical examination was normal according to records by her OB/GYN. Id. However, the undersigned does not find persuasive the fact that Plaintiff did not complain about her back or have her back examined during an appointment with her OB/GYN.

Additionally, the ALJ did not even discuss Plaintiff's alleged side effects from her medication. Plaintiff testified that one of the reasons she could not perform her past work was because of memory problems. There are records indicating she mentioned the memory problems to her physician. Additionally, Plaintiff testified she took a two to three hour nap every day and there is evidence she complained of fatigue to her doctor. (Tr. 382). The ALJ failed to mention this evidence.

In sum, the ALJ did not articulate substantial reasons for discrediting Plaintiff's complaints of pain. As such, this Court will remand this case with instructions for the ALJ to reconsider Plaintiff's complaints of pain, making sure to apply the proper standard as set forth by the Eleventh Circuit in Foote. Specifically, the ALJ should determine whether Plaintiff's underlying medical conditions could reasonably be expected to give rise to her alleged pain and subjective symptoms, and should reconsider Plaintiff's credibility when making this determination. Additionally, the ALJ should address Plaintiff's claims regarding the side effects of her medication, specifically, memory problems and fatigue. If the ALJ again decides not to credit

Plaintiff's testimony about her pain and subjective allegations, the ALJ must articulate specific and adequate reasons for doing so.

### 2. Whether the ALJ erred by failing to give considerable weight to the opinion of Plaintiff's treating physician

Plaintiff also argues the ALJ failed to provide sufficient reasons for her decision to give "not much weight" to Dr. Trescot's opinion that Plaintiff was unable to work even part-time due to pain. (Doc. 12, pp.10-12). On June 13, 2006, Plaintiff's treating physician, Dr. Trescot, opined Plaintiff was unable to work even on a part-time basis due to pain and increased pain on exertion. (Tr 412). Plaintiff is correct that the opinion of a treating physician, such as Dr. Trescot, "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). The Eleventh Circuit has determined "good cause" exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's's own medical records." Phillips, 357 F.3d at 1241. In any event, whenever an ALJ decides to disregard the opinion of a treating physician, he/she must clearly articulate the reasons for so doing. Id.

In this case, the ALJ provided numerous reasons for giving Dr. Trescot's opinion less weight. First, the ALJ noted that Plaintiff had been able to work part-time at the alleged onset date. (Tr. 22). Next, the ALJ stated that Dr. Trescot was not a vocational expert and her opinion with regard to employment issues was "outside her realm of expertise." Id. Additionally, the ALJ pointed out that "any medical conditions that cause

17

limitation of function must be put in terms of function-by-function restrictions" and Dr. Trescot's records did not indicate she had limited Plaintiff's activities.  Id.  Finally, the ALJ stated Dr. Trescot's opinion contradicted her own FCE as well as Plaintiff's testimony that Plaintiff could sit for up to ten hours and could stand for the same amount of time as long as she could change position every half hour.  Id.

As for the ALJ's first reason, the Court does not see how the fact that Plaintiff was able to work part-time at the time of the alleged onset date of August 2, 2004 in and of itself demonstrates Dr. Trescot's opinion is entitled to less weight.  Dr. Trescot's opinion was rendered in 2006.  Plaintiff testified that her pain progressively worsened in the six years preceding the hearing in 2006.  (Tr. 457).  Additionally, Plaintiff testified she was contemplating quitting her part-time job due to her pain.  (Tr. 476).  Accordingly, the fact that Plaintiff was able to work part-time back in 2004 is not a sufficient reason to discredit Dr. Trescot's opinion in 2006, that Plaintiff is unable to work even part-time.

With respect to the remaining reasons given by the ALJ, the Court finds they are supported by substantial evidence and provide the requisite good cause to assign little weight to Dr. Trescot's opinion.  Initially, the ALJ is correct that Dr. Trescot failed to provide any specific functional limitations on Plaintiff's ability to do work.  Instead, she simply relied on the FCE performed by a physical therapist.  Moreover, as noted by the ALJ, Dr. Trescot's opinion that Plaintiff was not able to perform even part-time work, is not supported by the FCE.  In the FCE, the therapist opined Plaintiff could work at the sedentary level, however, the therapist was doubtful Plaintiff could sustain such performance for eight hours.  (Tr. 238).  There is no support in the record for the opinion

18

that Plaintiff could not perform even part-time work. Additionally, the ALJ noted Dr. Trescot's opinion contradicted Plaintiff's statements that she was able to sit for up to ten hours and stand for the same amount of time provided she were able to change position every half hour. (Tr. 22).

Although the undersigned believes the ALJ properly gave little weight to Dr. Trescot's opinion that Plaintiff could not perform even part-time work, the Court is concerned over the ALJ's failure to discuss the weight given to the FCE. The Court notes the FCE was completed by a physical therapist, rather than a doctor, and opinions of therapists are not considered medical evidence. However, the Social Security regulations provide that information from non-medical sources is also acceptable information to supplement information from medical sources. See 20 C.F.R. § 416.913(d). The regulations provide that other valid sources include other practitioners like "nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists." 20 C.F.R. § 416.913(d)(1). Ms. Davis's status as a physical therapist clearly permits her FCE to be characterized as an acceptable source of information under the Social Security Regulations and as this case is being remanded for other reasons, the Court directs the ALJ to consider the FCE and to indicate the weight given to the FCE, particularly the finding that Plaintiff might need to take intermittent breaks.

### 3. Whether the ALJ erred in finding Plaintiff could return to her past work

Plaintiff also argues the ALJ erred in finding she was able to perform her past work as a bookkeeper and office manager. (Doc. 12, pp. 14-15). Specifically, Plaintiff

claims the positions of bookkeeper and office manager require frequent reaching, handling, and fingering and Plaintiff was not able to do so. (Doc. 12, p. 14). Additionally, Plaintiff argues the bookkeeper position required constant near acuity and the office manager position required frequent near acuity. As a result of her Sjogren's Syndrome, Plaintiff claims she does not have the requisite acuity. Id.

The Court can quickly dispense with Plaintiff's argument regarding acuity. Although, a symptom her Sjogren's Syndrome[6] is dry eyes, Plaintiff has not presented any evidence that her dry eyes had any effect on her vision.

As for the reaching, handling, and fingering requirements, Plaintiff is correct that the Dictionary of Occupational Titles ("DOT") indicates both the bookkeeper and office manager positions require frequent reaching, handling, and fingering. The ALJ failed to include any limitations on Plaintiff's ability to reach, handle, or finger in the RFC. There is no evidence in the record that Plaintiff had any limitations on her ability to handle and finger. The FCE completed by the physical therapist noted that Plaintiff had excellent hand dexterity and while her grip was somewhat limited, it was still within the normal limits. (Tr. 239). However, the therapist completing the FCE found Plaintiff able to frequently lift out but only occasionally lift up. (Tr. 245). The Commissioner argues that "Plaintiff has not shown that this slight distinction between reaching out and up is of any significance or that it would prevent her from performing either of these jobs." (Doc. 13, pp. 14-15).

The Court does not agree with the Commissioner. Reaching is defined in the

_____

[6] The ALJ noted that although Plaintiff was diagnosed with Sjogren's Syndrome, blood tests were negative for that disease. (Tr. 22).

Selected Characteristics of Occupations (DOT's companion volume) as "extending hand[s] and arm[s] in any direction" which would include both up and out. <u>See</u> <u>Selected Characteristics of Occupations</u>, App. C, C-3. Thus, it is not clear whether Plaintiff would be able to perform the reaching requirements for the bookkeeper and office manager positions if she can only occasionally reach out. The DOT does not provide any more specifics on the reaching requirements and the ALJ did not make any findings with respect to Plaintiff's ability to reach. As noted <u>supra</u>, while the ALJ referenced the FCE, she did not indicate what weight she gave the FCE, nor did she make any findings regarding the limitation on reaching out. As the Court is remanding the case for the ALJ to reevaluate Plaintiff's credibility, it will ask the ALJ to make a specific finding regarding Plaintiff's ability to reach.

**4.** **Whether the ALJ's decision is supported by substantial evidence**

Finally, Plaintiff summarily argues the ALJ's findings that Plaintiff was capable of performing her past relevant work, that minimal weight should be accorded to the opinion of her treating physician, and that Plaintiff's pain testimony was not credible are not supported by substantial evidence. (Doc. 12, p.15). As this argument is simply a rehash of the three issues analyzed above, there is no need for further discussion regarding this final argument by Plaintiff.

## IV. CONCLUSION

For the reasons stated herein, the Clerk of the Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **REVERSING** the Commissioner's decision and **REMANDING** the matter to the ALJ with instructions to:

21

(1) reconsider Plaintiff's testimony in light of all of the evidence, and explicitly articulate her reasons for accepting or rejecting Plaintiff's testimony, including Plaintiff's testimony regarding her fatigue and memory loss; (2) consider the Functional Capacity Evaluation completed by Anita L. Davis and indicate what weight the ALJ assigns to it; and (3) make specific findings regarding Plaintiff's ability to reach. Finally, the ALJ may conduct any further proceedings she deems necessary in light of any new findings. The Clerk of Court is directed to enter judgment consistent with this Order and Opinion, and thereafter to close the file.

Should this remand result in the award of benefits, Plaintiff's attorney is hereby granted, pursuant to Rule 54(d)(2)(B), an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b), until thirty (30) days after the receipt of a notice of award of benefits from the Social Security Administration. **This order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.**

**DONE AND ORDERED** at Jacksonville, Florida, this __14th__ day of August, 2009.

_Monte C. Richardson_

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record